UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EMAX ENTERPRISES LTD.,**<br>Flat H, 13/F., Block 4<br>Kwun Tong Industrial Centre<br>436 Kwun Tong Road, Kowloon,<br>Hong Kong;<br><br>**ROBERT D. VERNON**, President of<br>EMAX ENTERPRISES LTD.,<br>7015 E. Louisiana Avenue,<br>Denver, Colorado 80224,<br>　　　　　　　　**Plaintiffs,**<br><br>v.<br><br>**EDWARD VON ESCHENBACH,**<br>**in his official capacity as Commissioner**<br>**of the U.S. Food and Drug**<br>**Administration,**<br>5600 Fishers Lane<br>Rockville, MD 20857-0001;<br><br>**U.S. FOOD AND DRUG ADMINISTRATION,**<br>5600 Fishers Lane<br>Rockville, MD 20857-0001;<br><br>**MICHAEL LEAVITT,**<br>**in his official capacity as the Secretary**<br>**of the U.S. Department of Health and Human**<br>**Services,**<br>200 Independence Ave. S.W.<br>Washington, D.C. 20201;<br><br>**U.S. DEPARTMENT OF HEALTH AND**<br>**HUMAN SERVICES,**<br>200 Independence Ave. S.W.<br>Washington, D.C. 20201;<br><br>**W. RALPH BASHAM,**<br>**in his official capacity as Commissioner**<br>**of the U.S. Customs and Border Protection,**<br>1300 Pennsylvania Avenue, NW<br>Washington, D.C. 20229; | **COMPLAINT**<br><br>Case No. _____ |

| | |
|---|---|
| U.S. CUSTOMS AND BORDER PROTECTION, <br> 1300 Pennsylvania Avenue, NW <br> Washington, D.C. 20229; <br><br> MICHAEL CHERTOFF, <br> **In his official capacity as Secretary** <br> **Of the U.S. Department of Homeland Security,** <br> Washington, D.C. 20528; <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, <br> Washington, D.C. 20528; <br><br> and <br><br> THE UNITED STATES OF AMERICA, <br><br>                          Defendants. | |

## COMPLAINT

1.       This is a Complaint for Declaratory and Injunctive Relief. Plaintiffs seek a declaratory ruling from this Court pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants have violated 19 U.S.C. § 1607(a), required notice for the seizure of merchandise; have violated 19 U.S.C. § 1499, required notice for detention and testing of merchandise; have violated Plaintiffs' Fourth Amendment rights against an unreasonable warrantless seizure without probable cause; have violated Plaintiffs' Fifth Amendment rights to Due Process for denying Plaintiffs timely notice of detention and seizure of merchandise and denying Plaintiffs a timely opportunity to object and for ordering Plaintiffs' agents not to disclose to Plaintiffs the fact of Defendants' hold and of Defendants' seizure of the merchandise; and have violated the Administrative Procedure Act (APA) prohibition against unlawful agency action that is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law 5 U.S.C. § 706(2)(A). Plaintiffs seek an injunction barring Defendants from further seizure or detention of Plaintiffs' merchandise

2

intended for immediate export outside the United States to permit that export to proceed expeditiously without any further government delay, molestation or encumbrance.

2.  This is a case of repeated law, process, and rights violations by agencies of the federal government. In violation of federal statutory law (19 U.S.C. § 1607(a) and 5 U.S.C. 706(2)(A)) and the Fourth and Fifth Amendments to the U.S. Constitution, Defendants have seized the Plaintiffs' (hereinafter collectively "EMAX's") merchandise and have prevented EMAX from conducting its import-export business. Defendants have engaged in an unconstitutional warrantless seizure of merchandise without probable cause. Defendants have violated statutory notice requirements, 19 U.S.C. § 1499, for detention of Plaintiff's merchandise. Defendants have ignored their own administrative processes, 19 U.S.C. § 1607, and have purposefully refused to inform EMAX of probable cause for seizing its merchandise. Defendants have unlawfully instructed agents of EMAX, warehouse bailees, not to inform EMAX of the Defendants' wrongful seizure of EMAX's merchandise. Defendants have stated that ultimate authorization to permit export of the products at issue may be delayed "indefinitely." Defendants have unjustifiably and illegally prevented export of the merchandise.

3.  The foregoing actions prevent EMAX from maintaining its lawful import-export business and have caused EMAX to suffer loss of profits, loss of customer trust and confidence, and loss of fees for product storage in excess of $ 275,000. This Complaint seeks declaratory and injunctive relief to permit the immediate and unmolested export of the seized merchandise to foreign purchasers. EMAX is engaged in international business activities that include transporting ephedra powder and ephedra extract blends from China to U.S. ports and Foreign Trade Zones (FTZ) and from there to foreign purchasers. All of the merchandise at issue is designated for export directly from the FTZ and in full accordance with federal law to foreign

3

purchasers in foreign destinations. None of the merchandise is intended for importation into the customs territory or commerce of the United States.

## I.    JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. 1331 for all causes of action because all causes arise under the Constitution and laws of the United States.

5. This Court has personal jurisdiction over the Defendants under 28 U.S.C. § 1346(a)(2) because this case involves the enforcement of federal law. This is an action for claims against the United States founded on Acts of Congress.

6. This Court is the proper venue for this action under 28 U.S.C. 1402(a) because Defendants are federal agencies and officers with their principal places of business in the District of Columbia.

## II.    DESCRIPTION OF THE PARTIES

7. **EMAX Enterprises Ltd.**  Plaintiff EMAX is an import-export broker with headquarters in Hong Kong and offices in Hong Kong and Denver, Colorado. Plaintiff specializes in importing products from China into the United States and other countries. EMAX imports and exports on behalf of its clients a variety of goods, including, but not limited to, raw ingredients for foods and traditional Chinese medicine.

8. **Robert D. Vernon**.  Plaintiff Vernon is the President of EMAX Enterprises Ltd. EMAX Enterprises Ltd and Plaintiff Vernon are collectively referred to herein as "EMAX."

9. **Andrew Von Eschenbach, M.D.**  Defendant Dr. Von Eschenbach is the Commissioner of the U.S. Food and Drug Administration and is sued in his official capacity only.

4

10.  **Food and Drug Administration (FDA).** Defendant FDA is that administrative agency granted authority by Congress to regulate the importation and interstate manufacture, sale, and distribution of foods, drugs, cosmetics, biologics, medical devices, and dietary supplements in the United States. FDA is a part of the United States Department of Health and Human Services. FDA's Center for Food Safety and Applied Nutrition (CFSAN) is one of six product-oriented centers that, in coordination with a nationwide field force, carries out the mission of the FDA. CFSAN and FDA's field staff, including its import branch agents and inspectors, are responsible for ensuring that all products intended for import into the U.S. are safe, sanitary, wholesome, and honestly labeled.

11.  **Michael Leavitt.** Defendant Michael Leavitt is the Secretary of the Department of Health and Human Services and is sued in his official capacity only.

12.  **U.S. Department of Health and Human Services (DHHS).** Defendant DHHS is the principal federal government department responsible for protecting the health of all Americans and providing essential human services. DHHS and FDA are part of the executive branch of the United States government.

13.  **W. Ralph Basham.** Defendant W. Ralph Basham is the Commissioner of United States Customs and Border Protection and is sued in his official capacity only.

14.  **United States Customs and Border Protection (CBP).** Defendant CBP is part of the United States Department of Homeland Security and is responsible for entry of all import goods into U.S. territory, along with protecting U.S. agricultural and economic interests from harmful pests and diseases; protecting American businesses from theft of their intellectual property; and regulating and facilitating international trade, collecting import duties, and enforcing U.S. trade laws.

15. **Michael Chertoff.** Defendant Michael Chertoff is the Secretary of the Department of Homeland Security and is sued in his official capacity only.

16. **U.S. Department of Homeland Security (DHS).** Defendants DHS is the principal federal government department to prevent and deter terrorist attacks, protect against and respond to threats and hazards to the nation, ensure safe and secure borders, welcome lawful immigrants and visitors, and promote the free-flow of commerce.

### III.    FACTS

17. On September 5, 2006, EMAX brought to the U.S. from China 19,000 kg. (760 drums) of ephedra infusion blend intended for export to purchasers outside the United States. This bulk material arrived at the Port of Long Beach, California for admission to Foreign Trade Zone (FTZ) #50. EMAX gave prior notice of the shipment to FDA in a timely manner and provided all appropriate entry forms to CBP. CBP officials admitted the merchandise to FTZ #50 on September 6, 2006. FDA approved and supervised an export of 5,000 kilograms (200 drums) of the merchandise from the FTZ to a consignee in Mexicali, Mexico on September 20, 2006.

18. On September 30, 2006 EMAX brought to the U.S. from China 30,000 kg (1200 drums) of ephedra extract powder intended for export to purchasers outside the United States. This bulk material arrived at the Port of Long Beach for admission to FTZ #50. EMAX gave prior notice of the shipment to FDA in a timely manner and provided all appropriate entry froms to CBP. CBP officials, having at first queried whether FDA objected to the admission of the merchandise to the FTZ, admitted the merchandise to FTZ #50 on October 4, 2006.

19. Between September 25, 2006 and October 17, 2006, EMAX maintained almost daily communication with FDA regarding EMAX's intentions to export all of the merchandise in

the FTZ. EMAX did not object to, but fully honored and cooperated with, FDA and CBP requests to examine the shipments.

20. EMAX provided FDA with documents it requested for several export shipments EMAX sought to make from the FTZ. Those export requests included exportation of 30,000 kg. of ephedra extract powder to the Colon Free Zone in Panama and exportation of 13,500 kg. of ephedra infusion blend to a consignee in Mexico, which consignee had furnished an import permit issued by the Mexico government. EMAX also requested to ship 300 kg. of ephedra infusion blend to a DEA-licensed manufacturer in New Jersey pursuant to the Import for Export provisions of 21 U.S.C. § 381(d)(3) and in conformance with FDA Import for Export Guidelines. The EMAX-supplied Import for Export merchandise was to be used in further processing of drugs or nutritional supplements that were required by statute (secured by bond) to be exported to a foreign purchaser by the New Jersey manufacturer.

21. EMAX repeatedly sought FDA response to its written export requests, but the FDA officer responsible for handling the requests, Dr. James Miller, did not respond. Dr. Miller issued no written response to any of four faxes sent to him asking for permission to export between September 21 and October 17, 2006. Moreover, Dr. Miller did not respond to any of the 12 voice messages left on his official line between September 21 and October 17, 2006, asking for action on the export requests.

22. On October 10, 2006, CBP placed a Hold on all EMAX merchandise within the FTZ and instructed warehouse personnel not to inform EMAX of the hold or, if questioned by EMAX, to direct EMAX to Customs. As a result, EMAX did not learn of the detention until October 17, 2006, when, by chance, its customs broker provided the information based on conversations with CBP and warehouse personnel. EMAX contacted CBP Officer Jeremy Perez

on October 17, 2006, seeking information regarding the detention. CBP Officer Perez said that FDA's Dr. Miller should be contacted regarding the matter. When informed that Dr. Miller was not returning EMAX's calls, CBP Officer Perez stated that FDA questioned the admissibility of EMAX's merchandise into the FTZ and that, pending CBP investigation of the matter, a Hold had been placed on the merchandise. EMAX asked CBP Officer Perez whether EMAX was entitled to notice of the detention and why no notice of the hold action had been provided to EMAX. CBP Officer Perez agreed that EMAX was entitled to notice of the detention, but offered no explanation as to why notice had not been provided. EMAX then asked Officer Perez to fax a copy of the Detention Notice to EMAX, which he agreed to do.

23.     Upon receipt of the Detention Notice on October 17, 2006, EMAX determined that the detention was not undertaken strictly according to CBP Officer Perez's representation. The document stated that samples of the merchandise had been taken for testing pursuant to a determination of admissibility under 19 USC § 1499. That section of the US Code does not address admissibility, however; it deals with discrepancies between invoice descriptions of merchandise and the actual nature of the merchandise. EMAX sought to discern what the basis was for a discrepancy charge and to ascertain when the lab tests would be completed and made available.

24.     Despite EMAX's efforts to contact CBP Officer Perez for clarification, and to contact FDA's Dr. Miller for a response to previous requests for export approval, no information was forthcoming until October 25, 2006 when EMAX was contacted by CBP Officer Perez's supervisor, Ms. Vera Warren. Ms. Warren expressed her desire to give EMAX some response to its prior communications but said she could not provide any details of what was transpiring. She provided EMAX a telephone number for the CPB office of Fines, Penalties, and Forfeitures

(FP&F). Ms. Warren would offer no explanation as to why FP&F should be contacted, but she volunteered that EMAX would be "satisfied" by the outcome of the contact.

25. On October 26, 2006, the day after that conversation, EMAX first learned from its customs broker that no action would be taken on any export requests to CBP because all of the merchandise in the FTZ had been seized and removed by CBP. A conversation with the warehouse personnel revealed that they did not inform EMAX of the seizure which took place on October 20, 2006 because they had been instructed in no uncertain terms by the federal agents who performed the seizure not to inform EMAX of the seizure and to direct any EMAX inquiry to CBP.

26. Since learning of the seizure, EMAX has been unable to determine the legal basis for CBP's actions and, as of this date, official notice of the seizure has not been provided to EMAX by the government.

27. All of the merchandise seized contains less than 5% ephedrine alkaloids. The merchandise are exempt chemical mixtures under 21 C.F.R. § 1310.12(c). The Controlled Substances Act's requirements for the importation and exportation of listed and scheduled substances do not apply to the merchandise. All of the merchandise is intended for immediate export.

28. As of the filing of this Complaint, 20 days after the seizure, EMAX has still not received any official notice of the seizure. The merchandise that remains in CBP custody has long been scheduled by EMAX for immediate export. EMAX and counsel have repeatedly contacted Defendants and have been informed by each government agent contacted at FDA and CBP that none can give any basis for the seizure, including an explanation of probable cause.

Moreover, the Defendants would not specify when they could give information regarding the seizure and would not specify when they would supply a notice of seizure.

29. The merchandise seized is intended for immediate export; fulfillment of the demands from foreign purchasers for the exports is past due. The merchandise has a commercial value to EMAX of approximately $550,000.

## The Seizure

30. On October 20, 2006, Defendants seized 540 drums (13,500 kilograms) of EMAX's "Ephedra Infusion Blend" and 1200 drums (30,000 kilograms) of EMAX's Ephedra Extract Powder, all of which were awaiting FDA permission for immediate shipment to foreign purchasers in foreign destinations. Defendants also seized 12 drums (300 kilograms) of Ephedra Infusion Blend filed as an import for export pursuant to 21 U.S.C. § 381(d)(3), that was to go to a DEA-registered facility in New Jersey for processing and then to Europe to the purchaser. Those 12 drums were also waiting for a "may proceed" order from Defendants. Eight additional drums of ephedra infusion blend were seized; those drums are for export but the foreign buyer has yet to request their delivery. All of the merchandise in issue was admitted to the FTZ in Non-Privileged Status, which does not require intended use to be specified. Outside the jurisdiction of the United States, in each of the destination countries, the merchandise may be lawfully imported for use not only as a food but also as an ingredient in nutritional supplements and traditional Chinese medicine.

31. The goods were being stored at Metro International Trade Services, Inc. 909 E. Colon Street, Wilmington, CA 90744, a Foreign Trade Zone operator authorized and licensed to warehouse goods pursuant to the Foreign Trade Zones Act (19 U.S.C. 81a-81u), and the seizure was warrantless.

32. EMAX received no notice of the seizure at the time of its occurrence and first received word of its occurrence by chance a week after the event, October 27, 2006, from its customs broker, John C. McNulty Customs Brokers. The agents during the October 20, 2006 seizure instructed the warehouse staff, the bailees, not to inform EMAX, the bailor, of the seizure and upon their receipt of inquiry from EMAX about the merchandise to tell EMAX to contact CBP.

33. On October 27, 2006, EMAX contacted CBP and was told that no information regarding the seizure was available and that EMAX had to contact the office of Fines, Penalties & Forfeitures (FP&F).

34. EMAX, by counsel, contacted CBP again and was told by the FP&F specialist assigned to the case that he was unable to speak about the case, that the notice of seizure had not yet been released, and that he did not know when he would send the notice because he was laboring under an extensive caseload. That was on October 31, 2006, 11 days after the seizure.

### Shipping Information

35. All of the merchandise at issue came from EMAX's suppliers in China, with 30,000 kilograms (1200 drums) of ephedra extract powder coming from Tianshan Pharmaceutical Co. and the 19,000 kilograms (760 drums) of the ephedra infusion blend coming from Chifeng Arker Pharmaceutical Technology Company. EMAX and Tianshan Pharmaceutical entered into a contract governing the shipments of ephedra extract powder in January, 2006. At that time, Tianshan Pharmaceutical sought and eventually obtained an export license from Chinese authorities requiring all of EMAX's shipments, regardless of final destination, to be shipped to the United States in the first instance. Once at a U.S. port and in the Foreign Trade Zone warehouse(s), EMAX divides the shipments for dispatch to purchasers

outside of the United States. During September, Customs and FDA have permitted EMAX to export 200 drums (5,000 kilos) of Ephedra Infusion Blend from the FTZ to a Mexico consignee.

36. Additional merchandise is in transit to the United States and additional quantities have already been shipped by Tianshan Pharmaceutical to the port of Tianjin for loading on vessels bound for the United States.

37. All of the merchandise at issue is designated for exportation outside the United States directly from the FTZ and in full compliance with the lawful requirements of CBP and FDA. None of the merchandise is intended for importation into the customs territory or commerce of the United States.

38. EMAX's requests to FDA for exportation of 13,500 kilograms (540 drums) to Mexico and 30,000 kilograms (1200 drums) to the Colon Free Zone in Panama were faxed successfully to FDA's Dr. James Miller on September 29 and October 13, 2006, respectively. EMAX's request to ship 300 kilograms (12 drums) to New Jersey under the Import for Export provisions of the Food, Drug and Cosmetic Act was successfully faxed to FDA's Dr. James Miller on September 25, 2006.

39. Out of the first 14,000 kilograms (560 drums) seized, EMAX has yet to designate a destination for 200 kilograms (8 drums). It seeks release of those drums from seizure to remain within the Foreign Trade Zone until the foreign purchaser demands their export whereupon they will be exported outside the United States to that purchaser.

**Further Agency Actions of Delay and Harassment**

40. EMAX's products have been subjected to administrative harassment and delays.

41. With each of the requests for shipment, listed in paragraph 20, supra, FDA requested documentation and information above and beyond that required by CBP form 7512. It

12

refused to issue the "may proceed" orders requested. FDA did not require that additional information and documentation for the prior shipment of the same merchandise that it permitted to enter Mexico earlier in September.

42. Typically an export may proceed within 3-5 days after submission of a CBP form 7512. In each of the above requests, the delay has ranged from 42 days, 35 days, and 25 days, respectively. The delays are unreasonable and prevent the conduct and maintenance of a lawful import-export business.

43. Prior to the seizure and without notice CBP placed a hold for testing on 14,000 kilograms (560 drums) of Ephedra Infusion Blend and 30,000 kilograms (1200 drums) of ephedra powdered extract stored under FTZ status. CBP procedure requires that notice of that hold be delivered within 5 days of the sampling taking place. 19 U.S.C. § 1499. EMAX only learned by chance of the detention and sampling a week later from its customs broker and confirmed by warehouse personnel. EMAX then contacted CBP, which provided EMAX with the hold notice by fax only after EMAX demanded it and after the regulatory deadline had passed for delivery of the notice.

## IV. FIRST CAUSE OF ACTION: DEFENDANTS' HOLDING AND SEIZURE OF EMAX'S GOODS VIOLATES THE FOURTH AND FIFTH AMENDMENTS TO THE U.S. CONSTITUTION

44. EMAX realleges and restates paragraphs 1 through 43 and incorporates them herein.

45. The Fourth Amendment protects against unreasonable seizures executed without probable cause and without a warrant.

46. On October 20, 2006, Defendants seized EMAX's goods from a Foreign Trade Zone warehouse and did so without probable cause and without a warrant in violation of the

Fourth Amendment to the U.S. Constitution. No notice of seizure has been provided to EMAX at the time of this filing. No information has been given for the basis of the seizure despite repeated contacts and requests for it.

47. The Fifth Amendment protects against deprivations of property without due process of law. It is the right of a lawful owner to possess and control his property. Due process requires at a minimum notice and an opportunity to defend against the deprivation of property.

48. Defendants' October 10, 2006 hold order was not followed by timely issuance of notice to EMAX in violation of EMAX's rights to Due Process under the Fifth Amendment to the U.S. Constitution.

49. Defendants' federal agents violated EMAX's rights to Due Process under the Fifth Amendment by directing EMAX's warehouse bailees not to disclose Defendants' seizure of EMAX's merchandise to EMAX.

50. Defendants' October 20, 2006 warrantless and noticeless seizure of EMAX's merchandise; Defendants' directions to EMAX's warehouse bailees not to disclose Defendants' seizure to EMAX; and Defendants' consistent refusal to provide EMAX with any information explaining grounds for the seizure violates EMAX's Due Process rights under the Fifth Amendment.

### V. SECOND CAUSE OF ACTION: DEFENDANTS' ACTIONS ARE IN EXCESS OF THEIR STATUTORY AUTHORITY AND IN VIOLATION OF THE APA

51. EMAX realleges and restates paragraphs 1 through 50 and incorporates them herein.

52. Customs' organic statute requires that seizure be <u>made only pursuant to a valid warrant,</u> except in limited circumstances not applicable here. 19 U.S.C. § 1595 (emphasis added).

53. Customs' statute requires that notice of seizure be provided to the party in interest. 19 U.S.C. § 1607(a).

54. Customs' statute requires that notice of a hold of a shipment be served within five days after the decision to detain the merchandise. 19 U.S.C. § 1499(c)(2).

55. EMAX's merchandise may lawfully be imported and admitted to the Foreign Trade Zone and may lawfully be exported therefrom either by Transportation and Exportation or by Immediate Exportation to the foreign purchasers of the merchandise.

56. EMAX's products may lawfully be imported at each destination where the foreign consignees are located (Panama Colon Free Zone, Mexico and Europe)

57. On September 21, 2006, just a few weeks before the detention and seizure, Defendants permitted exportation from the FTZ to be completed without objection for the same merchandise.

58. Following that shipment Defendants unlawfully detained for testing EMAX's merchandise (of the same kind of merchandise that had just been shipped to Mexico) and unlawfully failed to provide timely notice to EMAX of that hold. 19 U.S.C. 1499(c)(2).

59. Three days after providing untimely notice of the detention to EMAX, Defendants seized EMAX's merchandise without notice, required under 19 U.S.C. § 1607(a), and instructed EMAX's bailees not to notify EMAX of the seizure.

60. As of the filing of this complaint, twenty days after the seizure, no notice has been provided to EMAX.

61. Defendants have acted inconsistently, arbitrarily and capriciously in the administration of EMAX's shipments in violation of the APA, 5 U.S.C. 706.

62. Defendants lack the statutory authority to prevent the immediate export of EMAX's shipments. 19 C.F.R. § 146.67 and 21 U.S.C. 801(d)(3).

63. Defendants have failed to follow their own procedures (19 U.S.C. §§ 1499 and 1607) and have unreasonably exceeded their own regulatory deadlines and reasonable processing times in violation of the APA. 5 U.S.C. § 706.

64. Defendants' instructions to agents of EMAX's bailee, that they not inform EMAX of Defendants' seizure, is deceptive activity beyond the lawful scope of Defendants' statutory authority, 5 U.S.C. § 706.

65. Defendants' seizure and hold of EMAX's goods are in excess of their statutory authority and in violation of the APA, 5 U.S.C. § 706.

## VI.   RELIEF REQUESTED

66. Plaintiffs respectfully request that this Honorable Court:

   i. **Declare** Defendants have violated 19 U.S.C. § 1499 by detaining EMAX's merchandise for testing without timely notice;

   ii. **Declare** Defendants have violated 19 U.S.C. § 1607 by seizing EMAX's merchandise without supplying a notice of seizure;

   iii. **Declare** Defendants have violated EMAX's Fourth Amendment rights against unlawful seizure by seizing EMAX's merchandise without a warrant and without probable cause;

   iv. **Declare** Defendants have violated EMAX's Fifth Amendment rights against deprivation of property without Due Process by seizing EMAX's merchandise without notice, by instructing EMAX's bailees not to inform

EMAX of the seizure, and by failing to inform EMAX in a timely manner of probable cause for the seizure;

v. **Declare** Defendants' seizure of EMAX's goods (despite their allowance of EMAX's prior shipment of the same goods out of the FTZ to Mexico and EMAX's compliance with all legal requirements) a violation of the APA's prohibition against agency action that is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

vi. **Enjoin** the Defendants from any further seizure or detention of the EMAX shipments now in CBP custody that are intended by EMAX for immediate export and to permit the release of the seized goods for immediate shipment to their foreign destinations without any further molestation, detention or encumbrance from Defendants.

vii. **Award** attorneys' fees and costs of suit to Plaintiff.

viii. **Grant** such other and further relief as the Court deems just and proper.

## VI. TRIAL WITHOUT A JURY REQUESTED

63. Plaintiff respectfully requests a trial without a jury pursuant to 28 U.S.C. § 2404.

**DATED this 9th day of November, 2006.**

Respectfully submitted:

EMAX ENTERPRISES INC.

By Counsel:
Jonathan W. Emord (DC Bar 407414)
Andrea G. Ferrenz (DC Bar 460512)

Emord & Associates, P.C.
1800 Alexander Bell Dr.
Suite 200
Reston VA 20191
Phone (202) 466-6937
Fax (202) 466-6938
jemord@emord.com

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

EMAX Enterprises, Ltd. and Robert Vernon

## DEFENDANTS

US FDA Commissioner (official capacity), FDA, US HHS Secretary (official capacity), DHHS, US CBP Commissioner (official capacity), CBP, US DHS Secretary (official capacity), DHS, and the United States

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  99999
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) _____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jonathan W. Emord & Andrea G. Ferrenz
Emord & Associates, PC
1800 Alexander Bell Dr., Suite 200
Reston VA 20191

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
● 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act
Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

● **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**   OR   ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Defendants violated U.S. Const. amend. IV&V; Tariff Act of 1930, & 5 USC 706 by seizing export merchandise w/o warrant, notice, or probable cause

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint
JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE November 9, 2006    SIGNATURE OF ATTORNEY OF RECORD _____

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.